IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01568-WYD-KMT

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CHARLES W. LEDFORD, a/k/a "CHARLES WILLIAM," individually and as Trustee of
SERVICE ENGINEERING TRUST; and
LORAINE LEDFORD,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case is a civil action to reduce to judgment federal tax assessments against the

defendants and to foreclose related tax liens securing their tax liabilities on certain real property.

This matter is before the court on the "United States' Motion for Summary Judgment Pursuant to

Fed. R. Civ. P. 56" (Doc. No. 89 [hereinafter "Mot. Summ. J."] filed June 30, 2009.  Jurisdiction

is premised upon 28 U.S.C. §§ 1331, 1340, and 1345 and 26 U.S.C. §§ 7402 and 7403 (2008).

### STATEMENT OF THE CASE

The pleadings, affidavits, depositions, and written documents permit the following

findings of fact.  Plaintiff the United States of America has named as defendants Charles W.

Ledford and Loraine Ledford, who have been married for approximately forty years.  (Compl. to

Reduce Fed. Tax Assessments to J. and to Foreclose Fed. Tax Liens on Real Prop. [hereinafter

"Compl."] [filed July 25, 2007]; United States' Mem. in Supp. of Mot. Summ. J. Pursuant to

Fed. R. Civ. P. 56 at 2, ¶ 3 [hereinafter "Mem."] [filed June 30, 2009]; Ex. 29, Charles Ledford

Dep. at 17, 19, 21, 23–25.)  During the 1980s and 1990s, Defendant owned and operated a

heating and air conditioning business under the name "Service Engineering" in Colorado

Springs, Colorado.  (Mem. at 2, ¶ 1.)  Charles Ledford established Service Engineering in 1979

as a sole proprietorship, incorporated the business in 1981, and eventually reorganized the

business as a trust in 1993.  (Mem. at 2, ¶ 2; Ex. 29 at 19, 23.)  Charles Ledford controlled

Service Engineering, and Loraine Ledford worked at Service Engineering from the early 1980s

through 2005.  (Mem. at 2, ¶¶ 2, 4; Ex. 29 at 19, 22–24; Ex. 31, Loraine Ledford Dep. at 12–13.)

Charles Ledford purchased a parcel of commercial property at 2925 King Street in

Colorado Springs, Colorado ("King Street property") in 1993 by warranty deed granting the

property to "Service Engineering Trust."  (Mem. at 2, ¶ 5; at 9, ¶ 39; Resp. Mot. Summ. J. at 5, ¶

39.)  Charles Ledford is the current owner of record of the subject property, having a deed

recorded purportedly transferring the property from Service Engineering Trust to "Charles

William" in 2003.  (Mem. at 2, ¶ 5; Ex. 29 at 191–92; Resp. Mot. Summ. J. at 5, ¶ 40.)  Charles

Ledford claims he is "Charles William."  (Ex. 29 at 191.)  Based on tax assessment records, the

estimated value of the King Street property is less than $200,000.  (Mem. at 9, ¶ 40; Resp. Mot.

Summ. J. at 5, ¶ 40.)

The defendants filed federal income tax returns until approximately 1993.  (Mem. at 2, ¶

6; Ex. 29 at 45.)  In 1992 and 1993, Charles Ledford became involved with various organizations

and came to believe that he was not "a person to be made liable" to pay federal income tax.

(Mem. at 2, ¶ 6; Mem. at 3, ¶ 7; Ex. 29 at 39–42, 46, 55–56; Br. in Supp. of Resp. Mot. Summ. J., Resp. Statement of Material Facts, and Additional Material Facts at 2, ¶ 7 [hereinafter "Resp. Mot. Summ. J."] [filed August 12, 2009].)  Charles and Loraine Ledford began filing federal tax returns which reported no taxable income and/or to claim exemption as "Non-resident Aliens." (Mem. at 3, ¶ 8; Ex. 29 at 84, 193–96.)  In 1994, the Ledfords attempted to amend ten years of previously filed returns by filing 1040NRs (Non-resident Alien Income Tax Returns) for the tax years 1983 through 1992, claiming they were residents of Colorado but not of the United States. (Mem. at 3, ¶ 8; Ex. 29 at 195–96; Ex. 32.)

In 1995, the Ledfords' federal income tax returns for certain years were referred to IRS Revenue Agent William Becker for examination.  (Mem. at 3, ¶ 9; Ex. 30 at 45–46.)  The examination initially focused on income generated by Service Engineering Trust and then expanded to the Ledfords' personal income tax liability.  (Mem. at 3, ¶ 10; Ex. 30 at 48–49.) The Ledfords filed no individual tax returns for the years 1993, 1994, or 1995.  (*Id.* at 76.) Charles Ledford met with Revenue Agent Becker but provided no documentation pertaining to his tax liability.  (Mem. at 4, ¶ 13; Ex. 29 at 228–29; Ex. 30 at 51–52.)  Revenue Agent Becker also was unable to obtain information from the Ledfords' accountant.  (Mem. at 4, ¶ 13; Ex. 30 at 53.)  Service Engineering's Form 1041 (Income Tax Return for Estates and Trusts) for1995, signed by Charles Ledford, reported significant annual revenue but claimed a loss for the year. (Mem. at 4, ¶ 14; Ex. 30 at 55; Ex. 36.)  Service Engineering's Form 1041 for the years 1993 and 1994, signed by Charles Ledford, each reported significant annual revenue and some taxes due. (Mem. at 4, ¶¶ 15–16; Ex. 30 at 56–57; Ex. 36.)

Revenue Agent Becker issued IRS summonses in an attempt to obtain documents to substantiate the information reported by the Ledfords on the 1993, 1994, and 1995 returns. (Mem. at 4–5, ¶ 18; Ex. 30 at 58.)  Revenue Agent Becker's examination resulted in a determination that Service Engineering owed taxes for 1993, 1994, and 1995 in the amounts of $143,545, $109,417, and $138,506 respectively, excluding penalties and interest.  (Mem. at 5, ¶ 18; Ex. 30 at 59–61.)  Revenue Agent Becker allowed deductions for qualified expenses for which he had documentation, but disallowed claimed deductions for which there was no verification.  (*Id.* at 63–64.)  Revenue Agent Becker's examination also determined that the Ledfords received distributions from various trusts controlled by them, including Service Engineering, and also that the Ledfords paid various personal expenses through checks issued by the trusts from 1993 through 1995.  (Mem. at 5, ¶ 19; Ex. 30 at 65; Ex. 43 at DDJ 01484.)  The Ledfords received, in cash or indirect payments, over $63,900 from the trust distributions in 1993, over $115,800 in 1994, and over $142,400 in 1995.  (Mem. at 5, ¶ 20; Ex. 43 at DDJ 01484.)

The tax examination resulted in a determination that Service Engineering Trust was an alter ego or "grantor trust," or a sham trust in which all day-to-day operations were conducted by and for the benefit of the Ledfords.  (Mem. at 5, ¶ 21; Ex. 30 at 83.)  At the time Revenue Agent Becker conducted the examination of Service Engineering and the Ledfords, the Ledfords had not filed valid income tax returns for the 1993, 1994, or 1995 tax years.  (Mem. at 5, ¶ 22; Ex. 30 at 74; Ex. 40.)  The examination resulted in a determination that Charles Ledford's outstanding federal income taxes for 1993, 1994, and 1995 totaled $531,268.  (Mem. at 5–6, ¶ 23; Ex. 30 at

4

81; Ex. 33.)  The examination also resulted in a determination that Loraine Ledford's outstanding federal income tax liabilities exceeded $531,000 for the same years.  (Mem. at 6, ¶ 23; Ex. 30 at 96–97; Ex. 35.)  After the Ledfords received Statutory Notices of Deficiency pursuant to 26 U.S.C. § 6213 in 1998 with regard to their outstanding income tax liabilities related to the 1993, 1994, and 1995 tax years, the Ledfords mailed a "Notice of Fraud" to the IRS, in which they claimed that the Notice of Deficiency constituted an act of fraud.  (Mem. at 6, ¶ 24; Ex. 29 at 68–69.)

In 2005, Charles and Loraine Ledford each were indicted for federal tax evasion and conspiracy to defraud the United States with regard to the 1992, 1993, 1994, and 1995 tax years. (Mem. at 6, ¶ 25; Ex. 29 at 164–65; Ex. 23.)  On April 11, 2005, Charles Ledford pleaded guilty to conspiracy to defraud the United States in violation of 18 U.S.C. § 371.  *See United States v. Charles W. Ledford*, Case No. 04-cr-00419-MK (D. Colo.), Doc. No. 120.  In the Plea Agreement signed by Charles Ledford on March 25, 2005, Ledford agreed and stipulated that the amount of tax loss to the Internal Revenue Service was $506,000 for the tax years 1992 through 1995.  (Mem. at 6, ¶ 27; Ex. 24 at 2.)  At his criminal sentencing hearing held on June 27, 2006, the District Judge stated that Ledford "iterated his commitment to the original stipulation made in the Plea Agreement to a tax loss of $506,000."  (Mem. at 6, ¶ 28; Ex. 25 at 4.)  In the Plea Agreement signed by Charles Ledford, he stipulated to the following facts: that after 1992 he and his wife created more than seventeen "trusts" in an effort to hide assets and income, including the formation of Service Engineering Trust in 1993; that he and his wife had not filed personal income tax returns for the years 1993 through 1995; that he and his wife concealed their income

5

by taking distributions from the various trusts, including Service Engineering Trust; and that they enjoyed complete control of the trusts.  (Mem. at 7, ¶ 30; Ex. 24 at ¶¶ 19–31.)  Charles Ledford's criminal conviction never has been appealed, set aside, or collaterally attacked through a *habeas corpus* petition.  (Mem. at 7–8, ¶ 29; Resp. Mot. Summ. J. at 4, ¶ 29.)

Each of the defendants has outstanding and unpaid assessments.  (Mem. at 7, ¶ 31; Exs. 1–2; Decl. of Ginger L. Wray (attached to Mot. for Summ. J.), ¶¶ 4–19.)  Each of the defendants has been served with a notice of assessments.  (Mem. at 7, ¶ 32; Exs. 1–22, 27; Decl. of Ginger L. Wray, ¶¶ 12, 16, 18.)  Moreover, the Forms 4340 mailed to the defendants also denote that a "legal suit" was pending in 1999.  (United States' Reply to Defs. Charles and Loraine Ledford's Opp'n to Mot. Summ. J. at 6, ¶ 32 [hereinafter "Reply Mot. Summ. J.] [filed August 25, 2009].)  Defendants asked for and received an administrative Collection Due Process hearing, and eventually instituted a Tax Court proceeding.  (Reply Mot. Summ. J. at 6, ¶ 32, Exs. 47–50.)  Defendants received a Notice of Deficiency in January or February 1998.  (Reply Mot. Summ. J. at 6, ¶ 32; Mem., Ex. 29 at 68–69; Mem, Ex. 33 at DDJ 644, Ex. 34 at DDJ 1537, and Ex. 35 at DDJ 1209.)

In 1995, Defendants Charles and Loraine Ledford filed a false tax return for the 1995 tax year.  (Mot. Summ. J., Decl. of Ginger L. Wray, ¶ 15.)  As a result, the IRS erroneously abated the tax assessments for Defendants Charles and Loraine Ledford for the 1995 tax year, but subsequently reinstated the assessments.  (Mem. at 7, ¶ 34; Ex. 24; Mot. Summ. J., Decl. of Ginger L. Wray, ¶¶ 5, 6, 14, 15.)  The IRS also erroneously abated the tax assessments against Charles W. Ledford for the 1993 tax year and against Loraine Ledford for the 1994 tax year, but

the assessments were reinstated soon after they were erroneously abated.  (Mem. at 8, ¶ 34; Mot.

Summ. J., Decl. of Ginger L. Wray, ¶¶ 5, 14.)  The IRS processed the tax returns filed by Charles

W. and Loraine Ledford in 2005 for the 1998, 1999, 2001, and 2002 tax years and assessed

taxes, interest, and penalties based on those returns.  (Mem. at 8, ¶ 35; Exs. 4–7.)

The outstanding tax liabilities, calculated through July 1, 2009, are as follows:

| Charles W. Ledford | | | |
|---|---|---|---|
| **Type of Tax** | **Assessed Total** | **Total Accruals** | **Balance Due** |
| 1040 for 1993 | $604,953.80 | $109,972.46 | $713,326.26 |
| 1040 for 1994 | $309,219.06 | $303,995.32 | $613,214.38 |
| 1040 for 1995 | $655,798.90 | $120,191.25 | $775,990.15 |
| 1040 for 1998 | $3,833.30 | $986.32 | $4,819.62 |
| 1040 for 1999 | $1,770.79 | $452.56 | $2,223.35 |
| 1040 for 2001 | $4,730.01 | $1,233.85 | $5,963.86 |
| 1040 for 2002 | $934.64 | $335.67 | $1,270.31 |
| Civil Penalty for 1983 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1984 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1985 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1986 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1987 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1988 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1989 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1990 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1991 | $500.00 | $755.26 | $1,255.26 |
| Civil Penalty for 1992 | $500.00 | $755.26 | $1,255.26 |

| Loraine Ledford | | | |
|---|---|---|---|
| **Type of Tax** | **Assessed Total** | **Total Accruals** | **Balance Due** |
| 1040 for 1993 | $322,945.78 | $393,780.18 | $716,725.96 |
| 1040 for 1994 | $470,489.43 | $123,913.77 | $594,403.20 |
| 1040 for 1995 | $544,439.80 | $146,589.20 | $691,029.00 |

| Service Engineering Trust | | | |
|---|---|---|---|
| **Type of Tax** | **Assessed Total** | **Total Accruals** | **Balance Due** |
| 1041 for 1993 | $250,101.70 | $305,781.65 | $555,883.35 |
| 1041 for 1994 | $145,361.04 | $184,972.32 | $330,333.36 |
| 1041 for 1995 | $167,860.28 | $216,641.01 | $384,501.29 |

(Mem. at 8, ¶ 36; Mot. Summ. J., Decl. of Ginger L. Wray, ¶ 19.)

Plaintiff moves for summary judgment allowing the United States to (1) reduce its assessments against Charles W. Ledford for federal income taxes and civil penalties for the 1993–1995, 1998, 1999, 2001, and 2002 tax years to judgment; (2) reduce its assessments against Loraine Ledford for federal income taxes for the 1993–1995 tax years to judgment; (3) reduce its assessments against Service Engineering Trust for federal income taxes for the 1993–1995 tax years to judgment; and (4) foreclose its federal tax liens against the real property located at 2925 King Street, Colorado Springs, Colorado titled in the name of "Charles William." (Mem. at 10.)

**PROCEDURAL HISTORY**

Plaintiff filed its Complaint on July 25, 2007 (Compl.) and their motion for summary judgment on June 30, 2009 ("Mot. Summ. J."; "Mem."). Defendants filed their response on

8

August 12, 2009.  (Resp Mot. Summ. J.)  Plaintiff filed its reply on August 25, 2009.  (Reply.)

This motion is ripe for review and recommendation.

## STANDARD OF REVIEW

### 1.    Pro Se *Defendants*

Because the defendants are proceeding *pro se*, I have construed his pleadings more

liberally and held them to a less stringent standard than formal pleadings drafted by lawyers.  *See*

*Erickson v. Pardus*, 551 U.S. 89, —, 127 S. Ct. 2197, 2200 (2007).  However, a *pro se* litigant

must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d

1276, 1277 (10th Cir. 1994).

### 2.    *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ.

P. 56(e) (2006).  A fact in dispute is "material" if it might affect the outcome of the suit under

the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable

jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th

Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence

when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*,

756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom

are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of

Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

*3.*      *Burden of Proof*

The taxpayer generally bears the burden of proof on all issues presented in a case.

*Rendell v. Comm'r of Internal Revenue*, 535 F.3d 1221, 1225 (10th Cir. 2008) (citing 26 U.S.C.

§ 7453; Tax Court Rule 142(a)(1)).  However, under 26 U.S.C. § 7491, when a taxpayer

produces credible evidence with respect to any factual issue relevant to ascertaining the

taxpayer's liability, the Government has the burden of proof with respect to such factual issue so

long as (1) the taxpayer has complied with the requirements of the Tax Code to substantiate any

item, and (2) the taxpayer has maintained all records required and has cooperated with

reasonable requests for witnesses, documents, meetings, and interviews.  "For the purposes of §

7491, 'credible evidence . . . is the quality of evidence which, after critical analysis, the court

would find sufficient upon which to base a decision on the issue if no contrary evidence were

submitted (without regard to the judicial presumption of IRS correctness).'"  *Sala v. U.S.*, 552 F.

Supp. 2d 1167, 1178 (D. Colo. 2008) (quoting *Griffin v. Comm'r of Internal Revenue*, 315 F.3d 1017, 1021 (8th Cir.2003)).

"When considering penalties, however, the burden of production is on the Government to make a *prima facie* case that penalties should apply.  If the Government meets this burden, the burden then shifts to [the taxpayers] to show [their] underpayment was not the result of negligence and that [they] did what a reasonably prudent person would have done under the circumstances."  *Sala*, 552 F. Supp. 2d at 1178 (citing *Sparkman v. Comm'r of Internal Revenue*, 509 F.3d 1149, 1161 [9th Cir. 2007]; *Van Scoten v. Comm'r of Internal Revenue*, 439 F.3d 1243, 1258 [10th Cir.2006]).

## ANALYSIS

*1.*      *United States' Claims to Reduce Defendants' Tax Assessments to Judgment*

    *A.*      *Civil Penalties for Filing of Frivolous Returns*

Plaintiff argues it is entitled to summary judgment as to Defendant Charles Ledford's liabilities for the filing of frivolous returns from the years 1983 through 1992 pursuant to 26 U.S.C. § 6702.  (Mem. at 12–13.)  As it existed at the time of the assessments, § 6702 provided for the imposition of a civil penalty of $500 if

> (1)    any individual files what purports to be a return of the tax imposed by subtitle A but which--
>> (A)    does not contain information on which the substantial correctness of the self-assessment may be judged, or
>> (B)    contains information that on its face indicates that the self-assessment is substantially incorrect; and
> (2)    the conduct referred to in paragraph (1) is due to–
>> (A)    a position which is frivolous, or

       (B)    a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws.

28 U.S.C. § 6702 (amended 2006).

Defendants' filings qualify as purported returns.  Defendants initially filed Form 1040 income tax returns for the years 1983 through 1992.  (Mem., Ex. 29 at 196.)  In 1994, the defendants attempted to amend these tax returns by filing 1040NRs for the tax years 1983 through 1992, claiming they were residents of Colorado but not of the United States.  (Mem., Ex. 29 at 195–97; Ex. 32.)  Defendants received a notice from the IRS requesting that they withdraw the Forms 1040NR because they were deemed frivolous filings, as the defendants were not resident aliens but rather United States citizens.  (Mem., Ex. 29 at 197; Ex. 32.)  Defendants did not withdraw the Forms 1040NR.  (*Id.*)  In his deposition, Charles Ledford explained that he and his wife believe that, "[b]ased on the definition of what the United States meant, it was restricted to the District of Columbia's territories and possessions," that he and his wife are "foreign to that," and, therefore, they are not liable for federal income tax.  (Mem., Ex. 29 at 197-98.)

"The crucial inquiry pertinent to the assessment of the frivolous return penalty under 26 U.S.C. § 6702 is whether the purported return lacks 'information on which the substantial correctness of the self-assessment may be judged.'"  *Borgeson v. United States*, 757 F.2d 1071, 1073 (10th Cir. 1985)(citing 26 U.S.C. § 6702).  Plaintiff argues that the Forms 1040NR are substantially incorrect on their face and fail to provide information from which their correctness may be judged.  Plaintiff has failed to provide any of the 1040NR Forms for the tax years other than 1990 and 1991.  (*See* Mem., Ex. 32 at 2–26.)  These forms are signed by the defendants

"under Law of our U.S. of America." (*Id.*)  On the forms, every line requesting financial information was answered with the phrase "N/A" or crossed through with a line and left blank. (*Id.*)  The court agrees that the 1090NR Forms for the tax years 1990 and 1991 do not provide information upon which the IRS could judge the return's correctness.  See *LeDoux v. U.S.*, 375 F. Supp. 2d 1242, 1245–46 (D.N.M. 2005) (holding tax return containing only zeros insufficient for IRS to judge correctness of the return) (citing *Bradley v. United States*, 817 F.2d 1400, 1403–04 [9th Cir.1987]; *Hoffman v. United States*, 209 F.Supp.2d 1089, 1093 [W.D. Wash.2002] *Lemieux v. United States*, 230 F. Supp. 2d at 1146 [D. Nev.2002]).

Additionally, Forms 1040NR for the tax years 1990 and 1991 were based on the frivolous position that the authority of the United States is confined to the District of Columbia.  Many courts have made it clear that this argument is completely lacking in legal merit and patently frivolous.  *See Lonsdale v. U.S.*, 919 F. 2d 1440, 1448 (10th Cir. 1990) (citing cases).  Plaintiff has met its burden with regard to the penalty assessments for the 1990 and 1991 tax years.

For tax years 1984 through 1992, Plaintiff has submitted Certificates of Assessments and Payments (Forms 4340) signed by an IRS officer certifying they are true transcripts of all the assessments, penalties, interest, and payments on record for the tax years in question.  (Mem., Exs. 14–22), and contain information identifying Defendant Charles Ledford, a description of a "Miscellaneous Penalty IRC 6702 Penalty for Filing Frivolous Income Tax Return", the taxable period, and the date and amount of the penalty.

Defendants direct a multitude of arguments against the propriety of the Forms 4340, arguing, *inter alia*,  they are inadmissible hearsay; they were not prepared independently of

13

specific litigation; and they are unreliable. The court rejects all of Defendants' arguments. Title 26 U.S.C. § 6201(a)(1) authorizes the Secretary of Treasury to make assessments of all taxes imposed by the Internal Revenue Code. Forms 4340 are admissible evidence pursuant to Fed. R. Evid. 803(6) and (8) and are the proper means of establishing the facts of the administrative assessment, and notice and demand for payment. *See Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992) ("For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by § 6203 and Treas. Reg. 301.6203-1"). These Certificates are self-authenticating. *See* Fed. R. Evid. 902(1) and (4). Accordingly, this court finds Plaintiff has met its burden as to the penalty assessments for the years 1984 through 1992.

Plaintiff has failed to provide a 1040NR form or Form 4340 for the tax year 1983, and, therefore, the court is unable to determine whether the assessment of penalties under § 6702 was proper. The court finds Plaintiff has failed to satisfy its burden of making a *prima facie* case that penalties apply to tax year 1983. *See Sala*, 552 F. Supp. 2d at 1178.

Defendants also assert the assessments are barred by the statute of limitations. Generally, an action may be brought in court to collect an assessed liability within ten years from the date of assessment. 26 U.S.C. § 6502(a)(1). The statute of limitations for collection is suspended during the time that a Collection Due Process ("CDP") proceeding and any appeal therefrom is pending. 26 U.S.C. § 6330(e)(1). In addition to this tolling period, the statute of limitations cannot expire before the ninetieth day after the day of a final determination on the hearing. *Id.*

14

The assessments for the 1984 through 1992 tax years were made on May 13, 1996.  (*See*

Mem., Exs. 14–22.)  On December 20, 2000, Defendant Charles Ledford requested a CDP

hearing in response to a Notice of Federal Tax Lien concerning the civil penalties for tax years

1983 through 1992.  (Decl. of Ginger L. Wray, ¶ 21.)  The Forms 4340 for these tax years

contain a notation of "Legal Suit Pending" on December 22, 2000.  (Mem, Exs. 14–22.)  A

Notice of Determination regarding these assessments was sent to the defendants by certified mail

on February 4, 2002.  (Reply Mot. Summ. J., Ex. 50.)  The determination became final thirty

days later, because the Ledfords did not appeal.  *See United States v. Dawes*, 161 Fed. App'x

742, 748 (10th Cir. 2005).  This thirty days, along with the 411 days from December 20, 2000, to

February 4, 2002, tolled the ten-year collection period 441 days beyond May 13, 2006, until July

28, 2007.  This court need not add in the additional ninety days, as Plaintiff's case, filed on July

25, 2007, is just within the ten-year period for collection of the civil penalties assessed against

Defendant Charles Ledford for the years 1983 through 1992.

Finally, Defendants assert that the criminal conviction against Defendant Charles

Ledford precludes civil collection of the assessments.  The civil and criminal tax penalties

created by Congress can be used singly or in combination to induce compliance with the income

tax law and to provide a penalty suitable to every degree of delinquency.  *Sansone* v. U.S., 380

U.S. 343, 350–351 (1965).  The former consists of additions to the tax upon determinations made

by an administrative agency and the latter consist of penal offenses enforced by the criminal

process. *Spies* v. U.S., 317 U.S. 492, 495 (1943).  Invocation of either a civil, or criminal

sanction, does not exclude resort to the other, as these sanctions may be used in combination to

accomplish the objective of compliance. *Id.* The double jeopardy clause does not preclude the

imposition of both a criminal and civil sanction in respect to the same act or omission.

*Helvering v. Mitchell*, 303 U.S. 391, 399 (1938). Defendant Charles Ledford's earlier criminal

conviction failure to file tax returns and involved punitive criminal sanctions. *Id.* at 400-01. The

specific costs included in the assessments (tax deficiency, interest, tax penalties, late filing

penalty, fees and collection costs) are remedial civil actions primarily to induce payment of the

delinquent taxes, safeguards for the protection of revenue, and to reimburse for investigative and

collection costs. *Id.*; *Olshausen v. Comm'r of Internal Revenue*, 273 F.2d 23, 27 (9th Cir.1959);

*Plunkett v. Comm'r of Internal Revenue*, 118 F.2d 644, 650 (1st Cir.1941). As such, neither *res*

*judicata* nor double jeopardy applies.

The remaining arguments asserted by Defendants are nonsensical, meritless, and oft-

repeated tax protester arguments that have long been rejected by the federal courts as "patently

frivolous." *See Lonsdale*, 919 F.2d at 1448 (citing cases). This court rejects the arguments

again. Defendants have failed to offer any evidence that the tax assessments are incorrect in the

amount the Government claims. Given the fact that Defendants bear the burden of overcoming

the presumption that the IRS's tax assessments are correct, and in view of their failure to offer

any evidence contradicting the correctness of the tax assessments against them, this court

concludes that there is no genuine issue of fact regarding the assessments.

Accordingly, summary judgment is properly granted in favor of the plaintiff on its claim

to reduce the penalties for the 1984 through 1992 tax years to judgment and denied on its claim

to reduce the penalties for the tax year 1983 to judgment. Therefore, the court recommends that

judgment be entered against Defendant Charles Ledford for the tax years 1984 through 1992 in the amount of $11,297.34, plus statutory interest and other additions allowed by law.

>   **B.   *Defendant Charles Ledford's Individual Income Tax Liabilities for 1998, 1999, 2001, and 2002 and Defendants Charles and Loraine Ledford's Tax Assessments for 1993, 1994, and 1995***

Plaintiff argues it is entitled to summary judgment reducing to judgment the tax assessments against Defendant Charles Ledford for 1998, 1999, 2001, and 2002.[1]  Plaintiff also seeks summary judgment reducing to judgment the tax assessments against Defendants Charles and Loraine Ledford for 1993, 1994, and 1995.  The Forms 4340 regarding the years 1998, 1999, 2001, and 2002 submitted with Plaintiff's motion (Mem., Exs. 4, 5, 6, 7) identify Defendant Charles Ledford, describe the character of his assessed tax liabilities, state the applicable tax periods and amounts of the assessments, and are signed by an assessment officer.  The Forms 4340 for the years 1993, 1994, and 1995 submitted with Plaintiff's motion  (Mem., Exs. 1, 2, 3, 11, 12, 13) identify Defendants Charles and Loraine Ledford, describe the character of their assessed tax liabilities, state the applicable tax periods and amounts of the assessments, and are signed by an assessment officer.  Accordingly, the Forms 4340 are presumptive proof of the validity of the assessments at issue.  *See Long*, 972 F.2d at 1181.

Defendants assert that they never received notice of the assessments.  It is unclear to what Defendants refer when they speak of "assessments."  It is clear, however, that Defendants have

---

[1]The tax returns filed for these years were filed "jointly" by the defendants.  However, Plaintiff seeks only to reduce the assessments to judgment against Charles Ledford.  (Mem. at 14 n.2.)

received numerous copies of the Forms 4340 in the course of this litigation, including copies filed on the record.  (*See* Doc. No. 29, Decl. of Karen Pound, Exs. 1–22.)  These documents constitute the record of assessments.  *See* 970 F.2d at 737.  Defendants have asserted and continue to assert that they are entitled to an obsolete Form 23C, and this court has already found that Defendants are not entitled to the Form 23C.  (*See* Doc. No. 71).  Defendants claim to have had no notice of the assessments despite a record replete with evidence of notice.  (*See* Mem., Exs. 1–22; Ex. 33 at 11–25; Ex, 34; Ex. 35; Ex. 29 at 69; Ex. 38; Ex. 41; Exs. 47–50.) Defendants returned the notices dated January 23, 1998 "for cause" with the notation that the IRS had used a "fictitious name" and "fictitious address."  (Mem., Exs. 33–35.)  Defendants also returned a notice dated January 23, 1996, along with letters dated February 3, 1998, alleging the IRS had committed "fraud."  (Mem., Exs. 38, 39, 41.)  Additionally, Defendants sought to challenge the assessments through the legal process (Reply Mot. Summ. J., Exs. 47–50), and Defendants Charles and Loraine Ledford were defendants in a criminal trial involving certain assessments (1993, 1994, and 1995) that are at issue in this case.  (*See* Doc. 29, Decl. of Karen Pound, Ex. 23.)

Defendants' contention that they did not receive notice is belied by the evidence.  The Forms 4340 establish that notice and demand for payment was properly made.  *See Long*, 972 F.2d at 1181 (citing *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992) (Certificates of Assessments and Payments sufficient proof of adequacy and propriety of notices and assessments absent evidence to the contrary)).

Defendants also assert the tax assessments against Defendant Charles Ledford for 1998, 1999, 2001, and 2002 and the tax assessments against Defendants Charles and Loraine Ledford for 1993, 1994, and 1995 are barred by the statute of limitations.  The earliest assessment related to tax years 1998, 1999, 2001, and 2002 was made on September 12, 2005.  (*See* Mem., Exs. 4–7.)  The earliest assessments against Defendants Charles and Loraine Ledford for the 1993, 1994, and 1995 tax years were made on June 22, 1998.  (*See* Mem., Exs. 1–3, 11–13.) Accordingly, Plaintiff filed its claim related to these tax years well within the ten-year period for collection of taxes set forth in 26 U.S.C. 6502(a)(1).

As there is nothing in the record to rebut these presumptions, Plaintiff is entitled to summary judgment in its favor reducing the tax assessments against Defendant Charles Ledford's individual income tax liabilities for 1998, 1999, 2001, and 2002, and the tax assessments against Defendants Charles and Loraine Ledford for 1993, 1994, and 1995 to judgment.  Therefore, the court recommends that judgment be entered against Defendant Charles Ledford for the 1998, 1999, 2001, and 2002 tax years in the amount of $14,277.14, plus statutory interest and other additions allowed by law.  The court also recommends that judgment be entered against Defendant Charles Ledford for the 1993, 1994, and 1995 tax years in the amount of $2,102,530.79, plus statutory interest and other additions allowed by law.  The court also recommends that judgment be entered against Defendant Loraine Ledford for the 1993, 1994, and 1995 tax years in the amount of $2,002,158.16, plus statutory interest and other additions allowed by law.

19

**D.      *Service Engineering's Tax Assessments for 1993, 1994, and 1995***

Plaintiff seeks summary judgment against Defendant Service Engineering Trust on the

tax assessments for 1993, 1994, and 1995.  Defendant Service Engineering Trust has failed to

file an Answer or otherwise respond to the Complaint.  Upon Plaintiff's Motion, on July 6, 2009,

pursuant to Rule 55(a), the Clerk of the Court entered default against Defendant Service

Engineering Trust.  (Doc. No. 92.)

Plaintiff has presented evidence to support its request that the court reduce the tax

assessments against Defendant Service Engineering Trust to judgment.  Specifically, Plaintiff

has submitted Forms 4340 that reflect the tax assessments made against Defendant Service

Engineering Trust.  (*See* Mem., Exs. 8, 9, 10.)  The Forms 4340 submitted by Plaintiff in this

case establish that the assessments against Service Engineering Trust were proper; that notices

and demand for payment of the liabilities were properly sent; and that Service Engineering Trust

is presumptively liable for the unpaid taxes, penalties, and interest shown on the respective

certificates.  *See Long*, 972 F.2d at 1181.

The earliest assessment related to tax year 1993 was made on July 15, 1994.  (*See* Mem.,

Ex. 8 at 3.)  On May 19, 1999, Defendants Charles and Loraine Ledford requested a CDP

hearing relating to assessments for 1993, 1994, and 1995 federal income taxes assessed against

themselves and Service Engineering Trust.  (Reply Mot. Summ. J., Ex. 48 at 2–3.)  The Form

4340 for tax year 1993 contains notations of "Legal Suit Pending" on May 13, 1999, and May

17, 1999.  (Mem, Ex. 8 at 5.)  On July 20, 2001, the United States Tax Court issued its

"Memorandum Findings of Fact and Opinion" affirming the decision of the IRS regarding the

assessments for 1993, 1994, and 1995.  *Service Engineering Trust v. Comm'r of Internal Revenue,* 82 T.C.M. (CCH) 205 (2001); *see also* Reply Mot. Summ. J., Ex. 48.  It appears the United States Tax Court's findings were not appealed, and, therefore, the determination became final thirty days later.  *See United States v. Dawes*, 161 Fed. App'x 742, 748 (10th Cir. 2005).  This thirty days, along with the 799 days from May 19, 1999, to July 20, 2001, tolled the ten-year collection period 829 days beyond July 15, 2004, until October 22, 2006.  Adding the additional ninety days required by 26 U.S.C. § 6330(e)(1) would have tolled the ten-year collection period until January 20, 2007.  *See Dawes*, 161 Fed. App'x at 748; *United States v. Johnson*, No. 05C1509, 2008 WL 4449883, at *3 (N.D. Ill. Sept. 30, 2008); *United States v. Howard*, No. CV07-620 TUC DCB(HCE), 2008 WL 4471333, at*5 (D. Ariz. June 25, 2008); *Perez v. United States*, No. 3:00CV00302 GTE, 2001 WL 1399229, at *2–3 (W.D. Tex. Sept. 20, 2001).  Accordingly, as this case was filed on July 25, 2007, the tax assessment made on July 15, 1994, is outside the ten-year period for collection of taxes set forth in 26 U.S.C. 6502(a)(1).

The next earliest assessment related to tax year 1993 was made on July 24, 1995.  (*See* Mem., Ex. 8 at 3.)  The same tolling period analyzed above applies.  The collection period was tolled 829 days beyond July 24, 2005, until October 31, 2007.  Therefore, even excluding the additional ninety days required by 26 U.S.C. § 6330(e)(1), the July 24, 1995 tax assessment and all other tax assessments made after that date for the tax year 1993 are well within the ten-year statute of limitations period.  Additionally, as the earliest assessment related to tax year 1994 was made on October 30, 1995 (*see* Mem., Ex. 9), and the earliest assessment related to tax year

1995 was made on June 22, 1998 (*see* Mem., Ex. 10), the action for collection of those

assessments also is well within the ten-year statute of limitations period.  26 U.S.C. 6502(a)(1).

Therefore, summary judgment is properly granted in favor of Plaintiff on its claim to

reduce the penalties against Defendant Service Engineering Trust on the tax assessments for

1993, 1994, and 1995, excluding the July 15, 1994 assessment and any interest and penalties

arising therefrom.  The court recommends that judgment be entered against Defendant Service

Engineering Trust based on an accounting to be provided to the Court following ruling on this

Recommendation.

**2.**      ***Foreclosure and Order for Judicial Sale***

Plaintiff seeks to foreclose its federal tax liens and an order for judicial sale of the King

Street property pursuant to 26 U.S.C. § 7403.  Upon notice and demand for payment, a lien for

taxes arises upon "all property and rights to property, whether real or personal" of a delinquent

taxpayer at the time the assessment is made and continues until the assessed tax liability is

satisfied or becomes unenforceable for lapse of time.  26 U.S.C. §§ 6321 and 6322.  Once a lien

is established pursuant to 26 U.S.C. § 6321, Title 26 U.S.C. § 7403 authorizes a sale of the

property to satisfy the delinquent taxpayer's debt.  Title 26 U.S.C. § 7403 provides, in relevant

part,

> in all cases where a claim or interest of the United States therein is established,
> [the court] may decree a sale of such property, by the proper officer of the court,
> and a distribution of the proceeds of such sale according to the findings of the
> court in respect to the interests of the parties and of the United States. If the
> property is sold to satisfy a first lien held by the United States, the United States
> may bid at the sale such sum, not exceeding the amount of such lien with
> expenses of sale, as the Secretary directs.

22

*Id.* The Tenth Circuit has found that § 7403 confers "flexibility and broad discretion upon the courts in fashioning a remedy thereunder," and that § 6321 does not automatically require that a foreclosure sale be held pursuant to § 7403. *United States v. Hershberger*, 475 F.2d 677, 679 (10th Cir. 1973) (finding that "§ 6321 imposes a lien upon delinquent taxpayer's real and personal property, but it does not necessarily follow that § 7403(c) requires the courts to satisfy this lien via a tax foreclosure sale. . . . Emphasized another way, when the matter is before the court, Congress intends the court to exercise equitable powers in rendering its decision."); *see also United States v. Eaves*, 499 F.2d 869, 871 (10th Cir. 1974) (finding that "Section 7403 has traditionally been interpreted as conferring flexibility and broad discretion upon the courts in fashioning a remedy thereunder).

All parties "having liens upon or claiming any interest in the property involved in such action" are required to be named as defendants. 26 U.S.C. § 7403(b). There are no parties, other than Defendants herein, with legal interests in the subject property. The property is nonresidential, it is undisputed that it is owned by Defendant Charles Ledford. All of the elements necessary for the Court to order a judicial sale under 26 U.S.C. § 7403 are present: (1) the Defendants have refused and neglected to pay their federal tax liabilities; and (2) liens for those tax liabilities have arisen against all of their property and rights to property, including the subject property. The subject property should be sold at auction with the proceeds to be distributed first to the allowed costs of sale and second to the United States, with the United States applying its share of the sale proceeds to the balance of the Defendants' unpaid tax liabilities until the funds are exhausted.

23

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that

1.      The "United States' Motion for Summary Judgment Pursuant to Fed. R. Civ. P.

56" (Doc. No. 89) be GRANTED in part, as follows:

a.      Summary judgment should be granted in favor of Plaintiff on its claim to

reduce the penalties for the 1984 through 1992 tax years to judgment and denied on its claim to

reduce the penalties for the tax year 1983 to judgment.  The court recommends that judgment be

entered against Defendant Charles Ledford for the tax years 1984 through 1992 in the amount of

$11,297.34, plus statutory interest and other additions allowed by law.

b.      Summary judgment should be granted in Plaintiff's favor reducing the tax

assessments against Defendant Charles Ledford's individual income tax liabilities for 1998,

1999, 2001, and 2002, and the tax assessments against Defendants Charles and Loraine Ledford

for 1993, 1994, and 1995 to judgment.

i.      The court recommends that judgment be entered against Defendant

Charles Ledford for the 1998, 1999, 2001, and 2002 tax years in the amount of $14,277.14, plus

statutory interest and other additions allowed by law.

ii.      The court recommends that judgment be entered against Defendant

Charles Ledford for the 1993, 1994, and 1995 tax years in the amount of $2,102,530.79, plus

statutory interest and other additions allowed by law.

     iii.  The court recommends that judgment be entered against Defendant Loraine Ledford for the 1993, 1994, and 1995 tax years in the amount of $2,002,158.16, plus statutory interest and other additions allowed by law.

     c.  Summary judgment should be granted in favor of Plaintiff on its claim to reduce the penalties against Defendant Service Engineering Trust on the tax assessments for 1993, 1994, and 1995, excluding the July 15, 1994 assessment and any interest and penalties arising therefrom.  The court recommends that judgment be entered against Defendant Service Engineering Trust based on an accounting to be provided to the Court following ruling on this Recommendation.

     d.  The Court should order that the United States' federal tax liens be foreclosed upon the real property that is the subject of this case.  Plaintiff shall submit a proposed Order of Foreclosure and Decree of Sale setting forth the terms and conditions of the sale of the property.

### ADVISEMENT TO THE PARTIES

  Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d

1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

        Dated this 29th day of October, 2009.

                    **BY THE COURT:**

                    _____

                    Kathleen M. Tafoya
                    United States Magistrate Judge